UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

JOSEPH VIDAL,

              Plaintiff,

      -- against --

ROBERT E. GALPLIN,
DEANE M. GARDNER,
MISTY O'DELL, JEFFEREY PROCTOR,
PAUL T. PICCOLO, TIMOTHY A. HEATH,
AND DONALD VENETTOZZI,

          DEFENDANTS.
---------------------------------------------------------X

VERIFIED AMENDED
COMPLAINT

JURY TRIAL
DEMANDED

21-CV-1192-LJV

## I. PRELIMARY STATEMENT

1. Plaintiff, Joseph Vidal, brings this Civil Rights action pursuant to the Civil Rights Act of 1871, 42 USCA § 1983 against Prison Officials, Director, Supervisor, and employees of the New York State Department of Corrections and Community Supervision for damages arising out of unconstitutional polices, acts/omissions, retaliatory acts; Denial of an impartial decision maker, affirmation of procedural Due Process violation, and the denial of meaningful exercise in conjunction with punitive confinement under conditions that creates an atypical and significant hardship in relations to the ordinary incidents of prison life, violations of Plaintiff Vidal's rights under the First, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, federal law and common law.

## II. JURISDICTION AND VENUE

2. Plaintiff Joseph Vidal, brings this action against defendants to redress the deprivation of rights secured to him under the First, Eighth, Ninth, and Fourteenth Amendments to the constitution of the united States. 42 U.S.C.A § 1983, federal law and common law.

3.    Plaintiff Joseph Vidal, is a resident of the State of New York and a citizen of the United States.   Defendants are, upon information and belief, either citizens or legal residents of the State of New York and/or citizens or non-citizens of the United States.   The matter in contraversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.    This court has subject matter jurisdiction over this case, pursuant to 28 U.S.C.A. §§ 1331, 1332, 1334 (2), 1343 (a)(3), in that plaintiff seeks damages.   Further this court has jurisdiction to declare the rights of the parties pursuant to the Declaratory Judgment Act of 1934, 28 2201 and 2202, and rules of Civil Procedure, Rule 65, and jurisdiction to grant Plaintiff Joseph Vidal's prayer for relief regarding cost, and waiver of court cost and bills of cost, pursuant to 42 U.S.C.A §§ 1915 (f)(2)(A) and (3).

5.    Venue is proper, pursuant to 28 U.S.C. § 1391(b)(1) and (2), in that this is the district where the acts/omissions giving rise to plaintiff's claim herein occurred.

### III. PARTIES

6.    Plaintiff, Joseph Vidal (herein after "Plaintiff" or "Vidal"), is currently incarcerated  at Eastern Correctional Facility in Napanoch, New York.  Plaintiff was incarcerated at all times relevant to this complaint at Elmira Correctionals Facility ("Elmira").

7.    Defendant Robert E. Galpin, a sergeant, and as such, under general direction of a higher ranking  authority, is responsible for the custody, security, and general well-being of Incarcerated Individuals  in assigned area of a facility.  Under certain circumstances, a sergeant may be in charge of the facility on a night shift or be second in charge under a lieutenant on a night shift.  Sergeants shall be responsible for supervision

of subordinates employees. They shall perform such duties as may be directed by competent authority.

7a. Defendant ROBERT E. GALPIN, is and was at all times relevant times hereto employed by Department of Corrections and Community Supervision ("DOCCS") at Elmira, assigned to supervise the office of the Inmate Grievance Program as a member of the Inmate Grievance Resolution Committee ("IGRC"). Defendant is sued in his personal capacity.

8. Defendant, DEANE A. GARNDER, is and has been, at all times relevant to this complaint, the Deputy Superintendent for Administrative Services ("DSA"). As such she holds authority to manage and direct designated areas of operation of the facility. The authority involves designated areas of responsibility. Such authority allows the incumbent a range of authority with which must discharged with state and federal law, agency policy, executive orders, and judicial decisions, as directed by the Superintendent and/or in his or her absence. A Deputy Superintendent may be designated as Acting Superintendent and First deputy superintendent.

8a. Defendant DEANE A. GARNDER has been and was designated by Superintendent Raymaond Conveny to conduct a superintendent Tier III Disciplinary Hearings for VIDAL. As such, she was responsible for conducting the hearing in accordance with the Due Process Clause to the United States Constitution and state statutory/regulatory authority. Defendant DEANE A. GARDNER is sued in her personal capacity.

9. Defendant MISTY O'DELL, is and has been, at all times relevant to this complaint, the Grievance Office Supervisor at Elmira, and as such is responsible for taking all inmate complaints, researching them, assigning a title, code number, grievance number, and logging the grievances, and attempting to obtain informal resolution; if unsuccessful, it was her duty

4

to provide the involved DOCCS' employee with information necessary to initiate an appropriate investigation.

9a. Defendant MISTY O'DELL is also required to utilize the expedited procedure for grievances alleging harassment or unlawful discrimination and ensure prompt action by the superintendent. Grievances alleging harassment must be forwarded to the superintendent by the end of the business day. Defendant MISTY O'DELL is sued in her personal capacity.

10. Defendant, PAUL PICCOLO, is and has been, at all times relevant to this complaint, the superintendent of the South Port Correctional Facility ("South Port"). As such he is and has been, the Chief Administrative Officer, responsible for the day-to-day management of the facility within DOCCS's system. As superintendent he holds the authority to manage and direct the total operation of the facility. This authority concerns all employees, volunteers, and Incarcerated Individual Program and activities connected with which to operate the facility in accordance with state and federal law, agency policy, executive orders, and judicial decision.

11. Defendant PAUL PICCOLO also has the authority to implement Local Policy, as relevant hereto outdoor recreation, packages, commissary, visit, and general facility program activities and moment policies. Defendant is sued in his personal and official capacity.

12. Defendant, TIMOTHY A. HEATH, is and has been, at all times relevant to this complaint, the Deputy Superintendent For Security Services ("DSS") shall be charged with enforcement of laws and rules relating to the administration of the institution and responsible for supervision of subordinates ranking employees. DSS shall visit and inspect various parts of the facility at any time of the day or night as directed by their

superiors to ascertain that subordinate employee are properly performing their duties and that rules are being complied with, and shall perform such duties as may be assigned by competent authority. Defendant Heath is being sued in his personal and/or official capacity.

13. Defendant, DONALD VENETTOZZI, is and has been, at all times relevant to this complaint, the Director of Special Housing ("SHU"), Inmate Disciplinary Program. As such, he is responsible, in part of operation of the Disciplinary Process, including among other responsibilities the review of guilty disposition of administrative Tier III Superintendent Disciplinary Proceedings and training of hearing officers. Defendant VENETTOZZI is sued in his official/personal capacity.

14. Defendant JEFFREY PROCTOR is and was at all times relevant hereto employed by DOCCS as a corrections officer at Elmira. Defendant was assigned to the post of security an alternate IGRC in the Grievance Office. Defendant Proctor is sued in his personal capacity.

15. At all times of the alleged acts and/or omissions and incidents, and at all times thereto, the defendants, agents, officers, servants, and employee of the State of New York Departmental of Corrections, acted under the color of state law, statutes, policy, procedures, regulations, rules, and custom and/or usage.

### **FACTUAL ALLEGATIONS**

16. At all times hereto, Plaintiff JOSEPH VIDAL is serving an indeterminate term of imprisonment of 40 years to his natural life for the crime of felony murder. Convicted on a technically, although factually innocent.

6

17.  Plaintiff Vidal is and has been extremely disliked by Correction Officials because he overtly exercise his right to file grievances and complaints, on his behalf and for assisting other Incarcerated Individuals, ("II") challenging staff malfeasance, nonfeasance, and suspect policies and practices.

18.  Defendant VENETTOZZI after being designated by Acting Commissioner Anthony Annucci, as Appeal Review Officer, did not solely sign off of the appeal; but personally reviewed and decided Vidal's appeal. And after learning of the violation committed by Defendant GARDNER, Defendant VENETTOZZI failed to remedy the wrong; and/or he is personally liable because he was grossly negligent in supervising, training, and managing Defendant GARDNER who failed to afford VIDAL his minimum due process right to have a fair and impartial decision maker preside over his disciplinary proceeding.

19.  Defendant PICCOL or DEFENDANT HEATH created a policy or allow a policy to continue that requires for II under Level I status---who wish to participate in outdoor recreation----to remain in handcuff and waist chain, with lack of winter clothing, the entire recreational period in a one man cage/pen, where there was no security concerns towards himself, staff, or other II.

20.  DEFENDANTS GALPIN, GARDNER, O'DELL, AND PROCTOR acting in concert, knowingly and unlawfully engaged in an act(s) of unlawful retaliation against VIDAL in response to him exercising constitutionally---protected right to file complaints and grievances against Defendants GAPLIN and O'DELL during his residency in Elmira.

21.  On July 7, 2018, Plaintiff deposited, a grievance concerning the conditions (unbearable heat/lack of ventilation) in the legal visit room, in the grievance box, before leaving the facility for a court trip.

22.  Upon Vidal's return to Elmira, he arrived during a facility lock down.  Plaintiff wrote Defendant O'Dell to inquire on his grievance.  She responded that her office did not receive the grievance.

23.  On August 23, 2018, Plaintiff submitted a second grievance (requesting a exception) and addressed it to Ms. O'Dell, Grievance Office (Guidance Unit), and upon review Defendant O'Dell titled, coded, and number the grievance (EL-49-001-18 - Coded #5 conditions of visit room).  At no time did she rely on title 7 New York Codes and Regulations § 701.3 (c) - Visitor complaint (Diversity Management) to dismiss and close the grievance.

24.  On August 24, 2018, Defendant Galpin summoned Vidal to Office 1 (Sergeant's Office) to discuss the manner Vidal writes his letters, and that he informed plaintiff  that he needs to omit the endearing words in his correspondence due to its impropriety.

25.  On August 27, 2018, an Inmate Grievance Resolution Committee ("IGRC") hearing was held.  At the hearing, Defendant Galpin for some absurb reason, contrary to the allegations in  the grievance and investigation report dated 8-13-18 (To Captin Carroll from Sgt Paciorek), determined that Plaintiff Vidal stated he was not affected by conditions} and dictated the IGRC response recommended that the grievance be closed per Directive 4040, § 701.3 (c).

26.  On September 21, 2018, Plaintiff filed a grievance (EL-49-103-18) complaining about Defendant Galpiin recommendation to close his grievance, and Defendant O'Dell closing the grievance to undermind the nature of his grievance, and circumventing  procedure and Vidal's effort to exhaust his

grievance to Central Office Review Committee ("CORC"), despite CORC hardly or never finds prison employees at fault for wrong doing.

27. On information and belief, and personal experience, Grievance Sergeant Gaplin along with Grievance Supervisor O'Dell undermind the grievance procedure when IIs submits grievances in the nature of staff-on-II assault, abuse of authority, fabrication of Inmate Misbehavior Report ("IMR"), and conditions of confinement.

28. On September 27, 2018, Vidal addressed a To-From to Defendant O'Dell along with another grievance (EL-49-123-18) dated 9-26-18, against Defendant O'Dell for her arbitrary actions in siding with Defendant Galpin after she had coded and title the grievance (conditions in visit room). Plaintiff Vidal attached his letters, addressed to former Governor Cuomo and state legislatures (Sentor Galliven and Assembly Weprin), to his grievance.

29. By letter dated October 10, 2018, Shelley Mallozzi, Inmate Grievance Program ("IGP") Director, on behalf of Governor Cuomo and Acting Commissioner Annucci responded to Vidal September 26 letter to them, basically condoning Defendants Galpin and O'Dells actions.

30. On October 10, 2018, the aforementioned grievance (EL-49-123-18) was filed on this day, according to IGRC Representive Dennis and Williams' Defendant Galpin came into the Grievance Office upset alleging the correspondence (TO-FROM) attached to the grievance contained fragrance.

31. Defendant Galpin proceeded to generated a false IMR alleging that Vidal added fragrance and endearing terms to the correspondence to attached to his grievance. Defendant O'Dell not happy with Vidal writing to government officials and filing a grievance against her lend herself to endorsed the IMR for the sole purpose of retaliation in hopes Vidal was sanctioned to Special Housing Unit ("SHU").

32. In Defendant Galpin's IMR he alleges that he was made aware of Vidal's use of fragrance on his correspondence with the IGP Office especially in missives sent to Defendant O'Dell.

33. That Vidal was verbally counseled in Defendant Galpin's Office (Sergeant Office) to never use fragrance on his correspondence with the IGP Office or suggestively intimate phrases * * *, for example, My dearest O'Dell, Truly yours forever, etc, and they were used in every correspondence.

34. That the phrasing that was used and added fragrance now again being utilized is unwarranted by Mrs. O'Dell, myself, Defendant Galpin, and any other staff associated with the IGP. That the attention that Vidal is giving Mrs. O'Dell has caused her to feel uncomfortable, insecure in her position.

35. That On October 11, 2018, Defendant Galpin and Defendant O'Dell discussed what he was going to allege in his IMR which was known to be false, and that sometime after Defendant O'Dell endorsed the IMR; Defendant Galpin included a hand written disciplinary rule violation 101.22 - Stalking without Defendant O'Dell's knowledge or consent.

36. On October 11, 2018, in accordance with New York State Regulation 7 NYCRR § 251-2.2, Lieutenant ("Lt") M. Randall, served as a Review Officer. As such, Lt. Randall reviewed Defendant Gaplin's IMR and designated the IMR as a Tier III level.

36a. Lt. Randall did not document any reason for the inclusion of the hand written Disciplinary Rule violation Rule 101.22 -- Stalking, before forwarding the IMR to the superintendent for designation of a hearing officer.

37. On October 12, 2018, Plaintiff Vidal filed a grievance in which he alleges to buying fragrance oils from the muslim community. Vidal complained that there is no rule prohibiting IIs from adding fragrance to correspondence addressed to family members, friends, organizations, state officials, which carries over from outgoing mail to in-house mail.

38. Plaintiff Vidal requested for a copy of the departmental rule, directive or memorandum, or institutional policy that prohibits the adding fragance oils to letters or envelopes.

39. By letter dated October 15, 2018, Defendant Galpin intercepted the grievance, without forwarding it to be process as described in ¶ 9, and returned it as a show of his authority.

<u>Superintendent Tier III Disciplinary Hearing</u>

40. On October 17, 2018, Defendant Gardner convened a Tier III Superintendent Hearing on the charges against Vidal.

41. During the hearing, Plaintiff Vidal objected to the proceeding, the nature of the allegations and charges set forth in the IMR. Plaintiff protested that the IMR was lodged against him because of his grievances and complaint letters to government officials as described in paragraphs ("¶") 21 through 30.

42. Vidal also protested that his Employee Assistant N. Allen reported to him that there were no letters to Defendant O'Dell with any of the endearing phrasing terms as alleged in Defendant Galpin's IMR.

43. Vidal further protested that there were no To-From memoranda, log book entries, or any other reports made by any other staff associated with the IGP office.

44. Defendant Gardner took an advocate stance and interjected by saying, you wrote dear on the letter.

11

45.  Vidal offered into evidence all his in-house correspondence which reflects how he addresses all administrators, both health and mental providers, counselors, etc, in a manner no different than how he addresses Ms. O'Dell.

46.  Defendant Gardner responded, I'll see what I could find.  I have a little work to do.  That is to say investigate, delve into the IGP Office's files and ferret correspondence similar in nature.  And adjourned the hearing.

47.  On October 18, 2018, Plaintiff filed grievance (EL-49-140-18) against Defendant Galpin for lodging a false IMR in retaliation to Vidal filing his grievances against him and Defendant O'Dell, and in addition to his complaints to state representatives and the Governor.

48.  Defendant Galpin and Defendant Gardner recruited Defendant Proctor for the purpose of having him offer false testimony---that he had advised Vidal not to add fragrance to his letter----in order to support the charge rule violation 106-10 -- Director Order and also support Defendant Gardner's advocacy on behalf of Defendant Galplin's retaliatory IMR.

49.  On October 26, 2018, Defendant Gardner recovened the hearing to receive testimony from Defendant Galpin and Defendant O'Dell.  Prior to receiving their testimonies, Vidal protested that the IMR was of his complaints against them.

50.  Defendant Gardner stated to Vidal I have an officer I'm going to call as my witness, who told you in the block (housing unit) not to use fragrance.  Vidal objected to the officer testifying because no officer was mentioned in the IMR or any To-From Memo.

12

51. Defendant Proctor to cover up Defendant Gaplin's false and retaliatory IMR falsely testified that during one of Vidal's call-outs he directed Vidal to stop using fragrance on his letters. Vidal protested Defendant Proctor's testimony predicated on Vidal's lack of recollection of having any encounter of the nature with him.

52. Then Defendant Gardner summoned Defendant Galpin into the room to receive his testimony. Vidal asked Defendant Galpin what he did with the letter he referenced in his IMR. Defendant Gardner interjected stating that if you did not request for the letter it would be not be made part of the record.

53. Plaintiff Vidal objected on the ground that the letter was suppose to be part of the record to support the alleged endearing terms and added fragrance mentioned in Defendant Galpin's IMR.

54. Defendant Gardner attempted to solicit Defendant Galpin to say that he advise Vidal not to send correspondence that would be deemed personal or without fragrance. And Defendant Galpin responded endearing terms, and Defendant Gardner added such as "yours truly".

55. Plaintiff asked Defendant Galpin where are the other correspondence with endearing terms, and Defendatnt Gardner interjected stating "they are on file," and further added they are not suppose to be part of the record file if you didn't request for them.

56. Vidal asked Defendant Galpin if he doesn't have the letters, Defendant Gardner responded "I can't say that. You have to get them from your assistance." And further stated "what did I tell you to do about the letters with phrases, 'to get a copy of them'".

57. Vidal protested that he did request them and his Employee Assistant Allen reported to him that no such correspondence with endearing terms exit, and which Defendant Gardner stated she would go to the grievance office to locate the correspondence, during the early stage of commencing the hearing

58. Vidal asked Defendant Galpin if the IMR is an offical document, Defendant Gardner responded "Yes".

59. Defendant protested that on information and belief Defendant Balpin has been disciplined and demoted to the rank of corrections officer from sergeant, before promoted back to the position of sergeant and assigned to the Grievance Office.

60. Vidal further protested that Defendant had been discipline for falsify records.

61. Again, Vidal protested that the specific correspondence with endearing terms referenced in the IMR were in some and substance part of the report and required to be made part of the record. Defendant Gardner defensively responded "I don't think so".

62. Vidal asked Defendant Galpin if his report derived from his alleged order directing him not to used the alleged phrases in the report, and his response was yes. Defendant Gardner interjected by saying and "added fragrance".

63. Plaintiff responded I did not add fragrance, and immediately Defendant Gardner stated, "I have more than one person saying you did." "Lets be clear you did sent the letter with fragrance."

64. Defendant Gardner continued to interjected several times when Vidal posed his questions, and she would either rephrase or propose her questions to discredit Vidal and ask Defendant Gaplin "you are not retaliating against the inmate?" * * * "so when you open the mail you are not arbitrarily picking and choosing in regards to what other inmate are saying to Vidal?" "Has Ms. O'Dell stated to you that Vidal's correspondence is offensive to her?"

65. Defendant Gardner took her questions a little further to the extent she asked Vidal if his grievances are legitimate or an attempt to foster a relations with Ms. O'Dell.

66. Vidal protested that he is in the hearing as a result of the IMR. And Defendant Gardner responded, "The IMR alleges you make her uncomfortable".

67. Plaintiff brought to the attention of Defendant Gardner that on October 18, 2018, he wrote Defendant Galpin in relations to his July 7, 2018 Grievance that he deposited in the IGP Box and that perhaps was the envelope that may have had fragrance and the alleged letter with phrase, and which he discard.

68. That Defendant Galpin by letter dated October 22, 2018, responded to Vidal and stated, in part, that it was unclear what Vidal wished to do * * *. Defendant Galpin referenced Vidal's grievance as letters, and mentions Vidal's [letter] in which he complains about Galpin's false accusation.

69. Defendant Galpin further states in his letter, in part, "As you were ordered in August of this year, refrain from endearing terms in your correspondence with this office as doing so may cause further misbehavior reports to be issued. He further added [t]o be clear stating, "I remain ***

truly" is not acceptable.  Sincerely, respectfully, thank you, or regards are all benign ending".

70.  Vidal introduced the letters into the record and protested that what Defendant Galpin wrote in his letter is exactly what was discussed, nothing about fragrance. Defendant Gardner examined the letters and kept the copies for the record.

71.  Defendant Gardner proceeded to call Defendant O'Dell as Vidal's witnesses. Defendant O'Dell testified that on October 11, 2018, Defendant Galpin came to her with a correspondence allegedly containing fragrance.

72.  In response to Defendant Garnder's questions, Defendant O'Dell testified that Vidal submitted correspondence in personal nature, and with frangance up until Defendant Gaplin was assigned to the Grievance Office.

73.  Defendant Gardner continued to ask leading questions---now that she aware Defendant Gaplin's IMR contained false allegations---"you and Sgt Galpin had conversation about how this makes you feel uncomfortable, and/or do you know if Sgt Gaplin or Officer Proctor had conversation with Vidal. Are you aware of their conversation with Vidal. Defendant O'Dell answered yes.

74.  Defendant O'Dell testified that she did not assist with writing the IMR, that she read the rule violations, discussed it with Defendant Galpin and signed it; that the rule 101.22 - Stalking was added after she signed the IMR.  That perhaps a captain * * *.

75.  Defendant Gardner then stated do you want me to call the captain as a witness.  If you think a captain can't have the charge included. Vidal objected to Defendant Gardner's response, because Defendant knew or should have know that only the Review Officer, Lieutenant possess the regulatory authority to review designate a level for IMR, dismiss or return the IMR to be rewritten.

76. Defendant Gardner would further ask, "you expressed your discontent and uncomfortable at least with the fragrance at this point?" Have you met Vidal one on one?

77. Plaintiff Vidal asked Defendant O'Dell if the correspondence (10-11-18) contain phrases: Truly yours forever, Forever yours, My dearest O'Dell? She falsely alleged she could not recall. And immediately, Defendant Gardner responded, "I do have correspondence it said "Dear Madame O'Dell," insinuating that Dear is inappropriate.

78. Vidal asked Defendant O'Dell if it was fair to say that she allowed Vidal to use fragrance.   Defendant Gardner interjected saying, "you have been spoken to by CO Proctor and Sgt Galpin previous to this."

79. Defendant O'Dell in response to Vidal's question conceded that Vidal never used the endearing terms recited in Defendant Galpin's IMR, and that there were times she scent fragrance on the correspondence, but never reported it. Defendant Gardner interjected by saying "apparently yes".

80. Defendant O'Dell testified, in attempt to support Defendant Galpin--that she was disturbed by the writing and scent on the envelope. She further she did not feel insecure.

81. Defendant O'Dell also testified that Vidal never made her uncomfortable, insecure or wary because they never came in contact.

82. After completion of Defendant O'Dell's testimony. Vidal objected that the record contains no correspondence with the phrases alleged in Defendant Galpin's IMR.

83. Defendant Gardner asked if he wants correspondence with similar phrase which she and Defendant Gaplin established. Vidal protested that his assistance reported to him that Candy, disciplinary secretary, told his Employee Assistant that no correspondence exist.

84.    Vidal repeated to Defendant Gardner that he only wishes for what is alleged in IMR and which he asked his assistant to get. Defendant Gardner responded, "she didn't do it, she couldn't find them."  Again, Defendant Gardner, stated "I established with Sgt Galpin that there are similar phrases."

85.  Defendant    Gardner    adjourned    the    hearing to    render    her disposition.

86.  On November 6, 2018, Defendant Gardner rendered a disciplinary disposition, adjudicating Vidal not guilty of Disciplinary Rules: 113.22 -- Property In Authorized Area, 107.10 - Interference with Employee, 107.11 - Harassment, and 101.22 - Stalking; and guilty of Rule 106.10 - Direct Order, and imposed a sanction for a period of 30 day punitive restricted confinement to keep lock (within the housing unit) with loss of privileges, packages, commissary, and telephone privileges for a period of 30 days.

87.  Plaintiff Vidal was deprived of rights and privileges:   (i) free movement and physical access to the general population's recreation (field house and gym) with access to:  daily showers, use of telephone, t.v, social activities, therapeutic exercise equipment, etc;   (ii) physical access to the law library and general library, (iii) Voluntary Rehabilitative Programs, paid program and/or job assignments ordinarily enjoyed  by the General Incarcerated Individual Population.

88.  Defendant  Gardner  conducted  Vidal's  disciplinary  Tier  III Superintendent Hearing stemming from Defendant Galpin's false IMR of October 11, 2018 and maliciously endorsed by Defendant O'Dell.

89.  On information and belief, both IGRC representatives Williams and Dennis Henly expresesed that Defendant  Sgt Gaplin caught a hard-on for Vidal, and to Vidal's belief it was the result of him filing grievances

concerning the conditions in the visiting room area, a room used for legal visits (Grievance No. EL-49-001-18), and grievance file against both Defendant Gaplin and Defendant O'Dell for closing his grievance (EL-49-123-18) based on Defendant Galpin's absurd supposition that Vidal was not affected despite him filing the grievance (visit conditions).

90. On information and belief, Defendant Galpin became pissed off because Vidal proceeded to file grievance (EL-49-103-18) seeking reinstatement of his grievance concerning the conditions of the visit, and which had nothing to do with discriminatory treatment.

91. After all the aforementioned grievances and complaints (9-26 and 30 and Oct 8 and 9, 2018 to state representatives and the Governor) Defendant Galpin prepared his IMR alleging, among other things, that he opened a correspondence addressed to Ms. O'Dell, Inmate Grievancence Supervisor, in the Guidance Unit-Inmate Grievance Program Office.

92. Defendant Galpin alleged in his IMR that the correspondence was in regards to greivance office business, and that what was unwarranted to him was the fragrance used on the letter.

93. On information received from IGRC Representative Williams, he conveyed to Vidal that he believes Defendant Galpin has a thing (feelings) for Defendant O'Dell.

94. On the evening of November 6, 2018, Vidal addressed a letter to Ms. O'Dell, along with his grievance (dated 11-2-18/EL-49-188-18) in which he complains on how Defendant Galpin, Defendant Proctor, and Defendant O'Dell came into an agreement with Defendant Gardner to have Defendant Proctor provide false at plaintiff's hearing for the sole purpose of retaliation in support of Defendant Galpin's false IMR.

95. On November 17, 2018, during the morning hour, breakfast time, Plaintifff seen Defendant Galpin in the messhall 2. Defendant Galpin to Vidal "you keep it up with your grievances, 'I'm gonna make it hard on you.'"

96. On November 20, 2018, an I.G.R.C. hearing was conducted without Vidal's presence in relation to his grievance (EL-49-140-18) in which Vidal accuses Defendant Galpin of writing a False IMR on October 11, 2018.

97. Defendant Galpin presided over the hearing and dictated the outcome of the grievance recommending it be dismissed and closed based on his supposition that Vidal was seeking to address matters pertaining to disciplinary report.

98. On November22, 2018, Plaintiff Vidal appealed the dismissal on the grounds: (1) he had a right to be present because he was no longer confined to keep lock when the hearing was held [pursuant to NYCRR § 701.5 (b)(2)(ii)(a)]; (2) Defendant not have preside over grievances filed against him and the dismissal was in bad faith; and (3) per Central Office CORC decision GH-79619-15 and II could file a grievance alleging false misbehavior report.

99. On November 23, 2018, Defendant Galpin retrieved Vidal's appeal to the I.G.R.C. response from the Inmate Grievance Office and took it to his office, Guidance-Office #1.i.

100. On information and belief, Defendant Galpin attempted to persuade Defendant O'Dell and the aforementioned I.G.R.C. representatives (at ¶¶ 89) that the cover letter attached to the appeal had fragrance before he took it his office.

101. Defendant O'Dell took not action to intervene in Defendant Galpin's retaliatory issurance of a second IMR on November 23, 2018.

102. On November 27, 2018, Vidal appealed Defendant Gardner's Tier III –Superintendent Hearing Disposition (dated Nov. 6, 2018) to Anthony J. Annucci, Acting Commissioner.

103. On February 1, 2019, on information and belief, Defendant Venettozzi personally reviewed, deliberated on and decided Vidal's appeal. Defendant Venettozzi failed to remedy the constitutional due process procedural violation.

104. Plaintiff Vidal filed two additional grievances dated November 28, 2018, in which he sought for Defendant O'Dell to reinstate grievance (EL–49–140–18), and he also filed grievance (EL–49230–18) dated November 29, 2018 in which in complained about the retaliation he was being subjected to by Defendant Galplin.

105. On November 28, 2018, Defendant Gardner presided over the Tier III Superintendent Hearing in relations to Defendant Galpin's November 23, 2018 IMR.

106. Defendant Galpin's IMR charged Vidal with violating departmental rules: 106.10 – Direct Order, 113.22 – Property in Unauthorize Area, and 180.11– Facility Correspondence.

107. The IMR alleges, in relevant part, that [he] Defendant Galpin opened an envelope addressed to Inmate Grievance from Vidal * * * I was overwhelmed with a fragrance emanating from the correspondence and the envelope * * * Vidal has been verbally counseled on past occasions to not include fragrance with his correspondence * * * on 10/11/18 I issued Vidal a [IMR] for the same conduct. He was found guilty of the direct order charge on 11/6/18 by DSA Gardner.

108. Plaintiff Vidal objected to the proceeding and protested that Defendant Sgt Galpin's second IMR is false and in retaliation because Vidal continues to pursue his initial grievance by challenging Defendant Galpin's IGRC recommendation dismissing his grievance (EL-49-140-18).

109. Plaintiff Vidal protested that he did not add any fragrance to any of his correspondence or any letters, and he requested for the alleged letter to be preserved for forensic analysis at his expense.

110. Plaintiff requested to examine the letter, before Defendant Gardner opened the plastic seal rapper she commented I could smell the fragrance.

111. Plaintiff agreed that there was some sort of scent, but he denied it was any of his fragrance and that it smells like a female fragrance.

112. Defendant Gardner asked Vidal if he had any witnesses he wished to call. Vidal requested Defendant O'Dell and Defendant Galpin. Defendant Gardne adjourned the hearing.

113. On December 10, 2018, Defendant Gardner recovened the hearing. Defendant Gardner again asked Vidal why he wished to call Defendant O'Dell. Vidal responded she is the one responsible for filing, logging, coding, and assigning a title to the grievance, etc (as alleged in ¶ 9).

114. Plaintiff Vidal also wished to ask Ms. O'Dell if she scent any fragrance on the cover letter and the attached appeal form, and the envelope.

115. Defendant Gardner denied Ms. O'Dell as a witness; and falsely allgeged that she was not present. Plaintiff objected and stated that if the grievance office was open she would have been working to carry out her responsibilities.

116. Defendant Gardner proceeded to summon Defendant Galpin to the hearing.

117. Defendant Gardner asked Vidal if he had any questions. Vidal asked Defendant Galpin where is office #1 located. Defendant Gardner responded that is the grievance office.

118. Vidal explained that the first IMR (10-11-18) identified the grievance office, and the second IMR, Defendant again interjected stating, that is the grievance office.

119. Defendant Galpin, after he was allowed to respond answered that the office 1 was the sgt's office, his office.

120. Defendant Galpin testified that he opens envelopes to screen the contents of the grievance before handing the grievance to the grievance supervisor to be assigned a number and investigation.

121. Plaintiff Vidal asked Defendant Galpin if the allegations in his report were completely truthful, and Defendant Gardner refrased the question and asked if the allegations are valid and have merit.

122. Defendant Vidal protested the refrasing of the question, and Defendant Gardner responded he said yes.

123. Then Vidal asked Defendant Galpin who picks up the grievances from the grievance box. Defendant Gardner asked Defendant Gaplin how may grievaneces box within the facility, and then asked Vidal which box he deposited his grievance appeal.

124. Plaintiff asked Defendant Galpin if the contents of his appeal to the IGRC appeal affected him in someway. Defendant Gardner injected, stating, "like how in what way?"

125. Plaintiff responded the specifics to his appeal.

126. Defendant Gardner picked up the appeal to the IGRC response, and stated to Defendant Galpin, "this is what you smelled and this (referring to the IMR) is what you wrote up." Defendant Galpin responded correct.

127. Defendant further add: "The sergeant wrote you a IMR because you put fragrance on the correspondence."

128. Then Defendant Gardner asked Defendant Galpin "anything in either these (referring to the appeal and complaint) do you feel you wrote the ticket on, or was it the fragrance of the letter, did you do it in retaliation?"

129. Vidal asked Defendant for what reason would he apply fragrance to the correspondence at issue? Defendant Gardner responded "the letter was not for him, you wanted it to got to her," referring to Ms. O'Dell.

130. Defendant Gardner then add, "let me ask you, if you were told not to put fragrance on this letter why did you, again?"

131. Vidal objected to her response, and Defendant Gardner responded "really cause I smell it" Vidal again objected, and Defendant Gardner responded "I smell it."

132. Vidal asked Defendant Galpin what is he seeking to accomplish with this second IMR? Defendant Gardner responded, "you don't know what he is seeking to accomplish?" "Well I'm gonna go out on the limb, I have an idea!"

133. Defendant Gardner stated, "we have already established that he is not writing you up, because you are filing grievances, 'he is writing you up because you have not stopped doing what he directed you to do, and this putting fragrance on the letter.'"

134. Vidal asked Defendant Galpin if the IMR is an official document? Defendant Gardner responded, yes. The Sergeant [Defendant Galpin] is writing this as truthful, that is was not falsified.

135. Plaintiff Vidal asked Defendant Galpin if he has been disciplined for falsifying records or unlawful conduct contrary to Correction Law §§ 137, 18, 139, and Departmental Rules and Regulations. Defendant Gardner responded, "you are not gonna know the sergeant's disciplinary record," and then stated to Vidal, "you tell me what you think the sergeant has been disciplined for?"

136. Upon completing Defendant Galpin, Defendant Gardner paused the tape as Defendant Galpin exited the room, she followed as he stepped out and Vidal overheard Defendant Gardner say, "I won't be long I'm gonna give you the honor." And return to the room.

137. Upon reconvening the hearing on December 10, 2018, Defendant Gardner found Plaintiff Vidal guilty for violating departmental rules: 180.11 -- Facility Correspondence, Rule 106.10 -- Direct order, and imposed a sanction of ninety (90) days confinement to SHU with loss of privileges.

138. Defendant Gardener entered her disposition on the Superintendent Hearing Disposition Sheet at 3:08 p.m., and Defendant Galpin escorted Vidal to be admitted to Special Housing Unit ("SHU") at approximately 3:15 p.m. for a rule violations that did not demonstrate a threat to safety or security goal.

139. On December 13, 2018, Plaintiff was transferred to South Port Correctional Facility (an SHU facility).

140. Plaintiff Vidal was deprived of rights and privileges: (i) free movement and physical access to: daily showers, use of telephone, t.v., social activities, therapeutic exercises equipment, etc; (ii) physical access to the law library and general library, (iii) Voluntary Rehabilitative Programs, paid program and/or job assignments (health class/porter) ordinarily enjoyed by the General Incarcerated Individual Population.

141. Defendant Gardner conducted Vidal's disciplinary Tier III Superintendent Hearing stemming from Defendant Galpins false IMR of November 23, 2018 in retaliation to Vidal exercising his First Amendment Constitutional Right to petition the government for redress of grievances.

142. On December 14, 2018, Plaintiff appealed Defendant Gardner's Tier III Superintendent disposition to Defendant Venettozzi, SHU Director.

143. On information and belief, Defendant Venettozzi personally reviewed, deliberated on an decided Vidal's appeal in accordance with DOCCS's regulations (7 NYCRR § 254.8). Defendant Venettozzi failed to remedy the constitutional due process procedural violation.

143a. Upon information and belief, Defendant Venettozzi has taken an oath upon appointment, as SHU Director, to discharge his duties faithfully and to protect and uphold the constitution of the United States and the constitution to the State of New York (NY Civil Service Law § 62; 7 NYCRR § 50.1 [aa]).

144. During Plaintiff Vidal's residency at South Port Correctional Facility ("South Port"), he was denied all meaningful exercise for 30 days, where he had to remain in mechanical restraints cuffed in front with waist chain restraints throughout the recreation period during all inclement weather, in a one man cage (9' x 5' pen).

145. That there was a practice where Plaintiff as well as other IIs would be required to remove their foot wear and exchange for galosh during the winter (rain, sleet, or snow). And nasty dirty knitted cloth gloves were distributed to wear under mechanical restraints.

146. There were no security concerns, as far as, threat on staff, himself, or other IIs; nor a deprivation order warranting hand cuff and waist chain restraints.

147. During the 30 days of exercise under the aforementioned restraints Vidal could not jog or run because of his chronic back and nerve pain and degenerative disk conditions that he continues to live with and endure.

148. At Elmira, Vidal was able to attend his health class program and recreation period in the facility's indoor field house where several recreation and therapeutic equipment were accessible. Vidal was able to use a bicycle in place of running. Vidal had access to equipment that could be used for spinal traction, and he could use the universal weight light therapeutic exercise and use the hyperextenion equipment to strength his back as instructed by his physical therapists.

149. Also in the Emira's field house, Vidal was able to take hot shower for a period longer than 7 to 10 minutes, watch t.v. programs/news, movies, sit and walk to socialize with other IIs in a warm and comfortable area of the facility, and use the telephone to communicate with family and friends daily. And Vidal was able to enjoyed the same privileges (without exercise equipment) in Elmira's Gymnasium.

150. In Southport Plaintiff could not do callisthenic, Yoga, stretch or keep warm or enjoy outdoor recreation in an open environment because of the limited clothing items (1 pair socks, t-shirt, shirt, sweatshirt, and coat) IIs are allowed to wear during inclement weather in a cage all 3 levels in accordance to Southport's exercise policy.

151. Vidal could neither do adequate exercise in the cell due to the limited space cell structure ($8' \times 5\frac{1}{2}'$), and because the cell fixtures/ furniture which took up much of the cell space. The walking width space was approximately 3 feet between the wall desk and bunk and 8 feet length from the front to the back of the cell.

## CLAIMS FOR RELIEF

152. Plaintiff repeats and reallages, as set forth herein, the allegations of all the preceding paragraphs.

### COUNT I: VIOLATION OF FREE SPEECH AND THE RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES GUARANTEED BY THE FIRST AMENDMENT

153. By filing grievances/complaints Plaintiff VIDAL was exercising his constitutionally protected right under the First Amendment to the United States Constitution.

154. Defendant GALPIN acting under the color of law and in his individual capacity, as an employee of Elmira Correctional Facility, deliberately harassed and intimated VIDAL, and instituted two adverse disciplinary measures against VIDAL. Plaintiff VIDAL's filing of his grievances and complaints was a substantial or motivating factor for defendant Galpin's wrongful conduct.

155. Defendant GALPIN's conduct issurance of his IMRs following the filing of grievance, complaints, and appeals, interview/investigation, unlawfully retaliated against VIDAL, and in doing so violated VIDAL's First Amendment right of freedom of speech and the right to petition the government for redress of grievances under 42 USCA § 1983.

### COUNT II: VIOLATION OF FREE SPEECH AND THE RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES GUARANTEED BY THE FIRST AMENDMENT

156. By filing grievances/complaints Plaintiff VIDAL was exercising his constitutionally protected right under the First Amendment to the United States Constitution.

157. Defendant O'DELL, acting under the color of law and in her individual capacity, as an employee of Elmira Correctional Facility,

knowingly, willingly, and deliberately together with Defendant GALPIN harassed and intimated VIDAL, and instituted an adverse disciplinary measure, false IMR against VIDAL. Plaintiff VIDAL's filing of his grievances and complaints was a substantial or motivating factor for defendant O'DELL's wrongful conduct.

158. Defendant PROCTOR acting under the color of law and in his individual capacity, as an employee of Elmira Correctional Facility, knowingly, willingly, and deliberately perpetrated the introduction of false testimony at VIDAL's disciplinary hearing to support Defendant GALPIN's initial IMR and retaliatory acts against VIDAL resulting a guilty disposition rendered by Defendant GARNDER. Plaintiff VIDAL's filing of his grievances and complaints was a substantial or motivating factor for defendant PROCTOR's wrongful conduct.

### COUNT III: VIOLATION OF ADEQUATE DUE PROCESS RIGHTS GUARANTEED BY THE FOURTEENTH AMENDMENT

159. Defendant GARDNER, Hearing Officer, acting under the color of law and in her individual capacity, as an employee of Elmira Correctional Facility, denied Plaintiff VIDAL his constitutional right to a fair and impartial hearing decision maker, and denied Vidal his constitutional right to call witnesses and present documentary evidence, without articulating any safety or security concerns, or sufficient reasons at his disciplinary hearing. Additionally, Defendant GARDNER denied Plaintiff VIDAL's right to challenge and put adverse evidence through forensic test.

160. Defendant VENETTOZZI, Appeal Officer, acting under the color of law and in his individual capacity, as an employee of the Department of Corrections and Community Supervision, upon being learning of the due process violation through Plaintiff VIDAL's administrative appeal failed to remedy the violation.

161. Defendants GARDNER and VENETTOZZI, deprived plaintiff of his constitutional procedure due process rights guaranteed by the Fourteenth Amendment to the United States Constitution, and made actionable under 42 U.S.C.A. § 1983, which defendants are individually and severally liable.

## COUNT IV:  VIOLATION OF RIGHT TO MEANINGFUL EXERCISE GUARANTEED BY THE EIGHTH AMENDMENT

162. Defendant PICCOLO and Defendant HEATH did create or allowed to continue a policy or practice described in the aformentioned paragraphs, and the practice and policy was the moving force that deprived Plaintiff VIDAL of meaningful exercise.

163. Defendants PICCOLO and HEATH are liable for the violation of Plaintif VIDAL's constitutional rights pursuant to 42 USCA § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff VIDAL hereby requests that this court grant the following relief:

164. Granting Plaintiff VIDAL a declaration that the acts and omissions described herein violated his rights under the constitutional and laws of the United States;

165. Granting Plaintiff VIDAL compensatory damages in the amount of $75,000.00 against each defendant jointly and severally; and

166. Granting punitive damages in the amount of $10,000.00 each defendant jointly and severally.

167. Issue an injunction ordering Defendant VENETTOZZI to:

1. strike and set aside the January 29, 2019 and February 1, 2019 determinations, and expunge all records of the same dispositions described in this complaint.

30

168. Award Plaintiff VIDAL the cost for this action, including reasonable attorney fees pursuant to 42 USCA § 1988, and

2. Such other and further relief as the Court may deem just and fair.

### JURY TRIAL DEMANDED

Plaintiff VIDAL demands a trial by jury on all claims so triable.

I, JOSEPH VIDAL, declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, the records incorporated by reference, and those matters I believe to be true on information and belief, pursuant to 18 USCA § 1746.

Executed on: November 14, 2022
             Napanoch, New York

                                        Respectfully Submitted,

                                        Joseph Vidal
                                        Pro Se

                                        Post Office Box 338
                                        Napanoch, NY 12458

Eastern Correctional Facility
P.O. Box 338
Napanoch, NY 12458

November 14, 2022

Mary C. Loewenguth
Clerk of Court
United States District Court
United States Court House
4 Niagra Squares
Buffalo, New York 14202
Attention: Pro Se Intake Unit

Re:   Joseph Vidal v. Robert E. Galpin, et al., 21-cv-1192 (LJV)

Dear Madame/Sir:

Please find enclosed an original and nine copies of Plaintiff's Amended Complaint.

Please file and schedule the same for the court's due consideration.

Thank you for your attention and consideration.

Have a nice day.

Happy holiday season. . .

Cordially,

Joseph Vidal
Pro Se
#94A5584

cc:   file

Encls.:  Am Compl



EASTERN

NEOPOST
11/17/2022
US POSTAGE $011.70⁰

CORRECTIONAL FACILITY

ZIP 12458
041M11463363

DC - WDNY

2 1 2022

BUFFALO

21-CV-1192

oewenguth
Court
ates District Court
ates Court House
Squares
New York 14202
: Pro Se Intake Unit

Joseph Vidal
94-A-5584
EASTERN CORRECTIONAL FACILITY
Box 338
Napanoch, NY 12458-0338

LEGAL MAIL

Mary C.
Clerk o
United
United
4 Niagr
Buffalo
Attenti